**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 3, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

In re: SHERRY ANN MCGANN,

    Debtor.

------------------------------

SHERRY ANN MCGANN,

    Appellant,

v.

JEANNE Y. JAGOW, Chapter 7 Trustee,

    Appellee.

No. 25-1065
(BAP No. 24-007-CO)
(Bankruptcy Appellate Panel)

_____

In re: SHERRY ANN MCGANN,

    Debtor.

------------------------------

SHERRY ANN MCGANN,

    Appellant,

v.

JEANNE Y. JAGOW, Chapter 7 Trustee,

    Appellee.

No. 25-1066
(BAP No. 24-004-CO)
(Bankruptcy Appellate Panel)

_____

**ORDER AND JUDGMENT***

_____

\* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral

_____

Before **McHUGH**, **MORITZ**, and **ROSSMAN**, Circuit Judges.
_____

Proceeding pro se,[1] Debtor-Appellant Sherry Ann McGann filed two related appeals arising out of her Chapter 7 bankruptcy proceedings.[2]  In appeal number 25-1065, McGann appeals the bankruptcy court's order finding her in contempt for failing to comply with a turnover order.  In appeal number 25-1066, McGann appeals the bankruptcy court's order denying her motion to voluntarily dismiss her Chapter 7 bankruptcy petition.  We affirm both orders.

## I.  Background

McGann filed a petition for Chapter 7 bankruptcy in December 2020, and Jeanne Y. Jagow was appointed as the Trustee.  On the petition date, McGann owned real property and improvements located at 1535 Grand Avenue, Grand Lake, Colorado (the "Property"), but she listed four liens on the Property.  In March 2021, the bankruptcy court granted McGann a discharge under 11 U.S.C. § 727.

In May 2022, the Trustee settled an adversary proceeding with two of the creditors who had liens on the Property.  McGann then tried to convert her Chapter 7

_____

estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We liberally construe McGann's pro se filings, but we do not act as her advocate.  *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

[2] The appeals were not consolidated for briefing, but they were consolidated for submission to the court.

bankruptcy to a Chapter 12 or 13 bankruptcy, and those proceedings took almost a year. In May 2023, the court denied her motion to convert.

In June 2023, the Trustee filed an application to employ a realtor to market the Property for sale, which the bankruptcy court granted over McGann's objection. On August 25, 2023, the Trustee filed a motion seeking access to the Property (the "Turnover Motion"). McGann responded, and the bankruptcy court held a hearing on the motion. It then entered an order on October 24, 2023 (the "Turnover Order"), requiring McGann to provide the Trustee with a key to the Property no later than November 13, 2023, and to allow reasonable access to the Property.

McGann filed a motion asking the bankruptcy court to reconsider the Turnover Order. She also filed a motion to voluntarily dismiss her Chapter 7 petition ("Motion to Dismiss"). In the Motion to Dismiss, McGann asserted she intended to pay the two remaining liens on the Property, along with other allegedly legitimate claims. She also asserted she would not pay certain other claims, nor would she pay the Trustee's administrative expenses for legal counsel and accounting professionals, what she deemed to be illegitimate claims. She contended she had been approved for a conditional loan to pay the legitimate creditors, subject to the bankruptcy court's approval.

McGann failed to provide the Trustee with a key to the Property by November 13, 2023, as ordered. A week later, on November 20, the bankruptcy court denied McGann's motion to reconsider the Turnover Order. At the conclusion

3

of that denial order, the court warned McGann that failure to comply with the Turnover Order could result in her being found in contempt.

On January 3, 2024, the Trustee filed a motion for an order to show cause why McGann should not be held in contempt for failing to comply with the Turnover Order (the "Contempt Motion"). On January 31, approximately eleven weeks after the deadline in the Turnover Order, McGann mailed a key to the Property to the Office of the United States Trustee rather than to the Chapter 7 Trustee.

The court also denied McGann's Motion to Dismiss at the end of January. In its order, the bankruptcy court determined that McGann failed to meet her burden to establish cause for dismissal under 11 U.S.C. § 707(a). McGann then filed a motion for reconsideration from the Order Denying Motion to Dismiss, which the bankruptcy court denied.

At the hearing on the Contempt Motion in February, McGann argued that the Trustee was seeking entry of a contempt order with unclean hands and she made various other arguments related to her treatment by the bankruptcy court and the Trustee. The bankruptcy court rejected those arguments and found that McGann had engaged in civil contempt of the Turnover Order and determined that the Trustee was entitled to an award of attorney's fees as a sanction. The bankruptcy court entered minutes of the proceeding summarizing its ruling (the "Contempt Order").

McGann separately appealed the Contempt Order and the Order Denying Motion to Dismiss to the United States Bankruptcy Appellate Panel of the Tenth Circuit (BAP), which affirmed both orders. McGann now appeals to this court.

4

## II.  Standard of Review

Although these appeals come to us from two BAP decisions, we review only the bankruptcy court's orders.  *Miller v. Deutsche Bank Nat'l Trust Co.* (*In re Miller*), 666 F.3d 1255, 1260 (10th Cir. 2012).  "'By this we do not mean that we ignore the procedural posture of the case before us . . . . Rather, we mean that we treat the BAP as a subordinate appellate tribunal whose rulings are entitled to no deference (although they certainly may be persuasive).'"  *Bird v. Wardley* (*In re White*), 144 F.4th 1216, 1228 (10th Cir. 2025) (alteration in original) (quoting *Johnson v. Riebesell* (*In re Riebesell*), 586 F.3d 782, 788 (10th Cir. 2009)).  And we review the orders at issue in these appeals for an abuse of discretion.  *See Lucre Mgmt. Grp., LLC v. Schempp Real Estate, LLC* (*In re Lucre Mgmt. Grp., LLC*), 365 F.3d 874, 875 (10th Cir. 2004) ("We review a finding of contempt for an abuse of discretion."); *Redmond v. Kester* (*In re Kester*), 339 B.R. 749, 751 (B.A.P. 10th Cir. 2006) (explaining that a decision on a motion to voluntarily dismiss a bankruptcy petition is "reviewed only for an abuse of discretion.").  "An abuse of discretion has been characterized as an arbitrary, capricious, whimsical, or manifestly unreasonable judgment."  *Mid-Continent Cas. Co. v. Vill. at Deer Creek Homeowners Ass'n, Inc.*, 685 F.3d 977, 981 (10th Cir. 2012) (internal quotation marks omitted).  "Put differently, under the abuse-of-discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the

lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Id.* (brackets and internal quotation marks omitted).

A. *Appeal Number 25-1065*

For a party "[t]o be held in contempt, a court must find the party violated a specific and definite court order and the party had notice of the order." *In re Lucre Mgmt. Grp., LLC*, 365 F.3d at 875 (internal quotation marks omitted). McGann argues the bankruptcy court erred in finding her in contempt for failing to comply with the Turnover Order and in imposing sanctions for her noncompliance. She asserts she "complied under duress," and "the Trustee failed to show any actual harm." 25-1065 Aplt. Opening Br. at 2.

McGann does not argue she did not have notice of the Turnover Order. Instead, she asserts that the bankruptcy court ignored her compliance with the Turnover Order even though she "mailed the keys as soon as possible upon receiving notice of contempt." *Id.* at 5. In her opening brief, she fails to acknowledge that she mailed the keys to the office of the United States Trustee, not the Chapter 7 Trustee. In her reply brief, she admits that she sent the keys to the "U.S. Trustee's Office," but contends this shows "a good-faith effort to comply." 25-1065 Aplt. Reply Br. at 3. She does not dispute, however, that the Turnover Order directed her to send the keys to the Chapter 7 Trustee, not the United States Trustee. She also ignores the fact that the Turnover Order directed her to deliver the keys by November 13, 2023, but the record shows she did not mail them until January 31, 2024.

6

As for her contention that the Trustee did not suffer any harm, she does not offer any record support for that argument. The bankruptcy court directed the Trustee to file a fee motion that detailed the number of hours and amount of fees for time spent to enforce the Turnover Order and McGann's non-compliance. The Trustee moved for $7,012.50 in fees. McGann did not file a response to the fee motion, so the bankruptcy court determined she had waived any objection. It found that the fees incurred were reasonable and necessary due to McGann's contempt and failure to comply with the Turnover Order. It entered a separate order awarding the fees to the Trustee. McGann did not appeal from that order.

McGann next argues the bankruptcy court abused its discretion by failing to consider her post-traumatic stress disorder (PTSD), harassment by the Trustee, and other mitigating mental health factors.[3] But McGann does not point to any record evidence to support her contention that she argued to the bankruptcy court that her PTSD or other mental health issues interfered with her ability to comply with the Turnover Order. And the BAP also noted in its decision that McGann had not shown where she raised these issues in bankruptcy court. She provides one record citation related to her PTSD, but it refers to her request to appear remotely for the hearing on the Contempt Motion, not as a reason she could not comply with the Turnover Order. Because McGann did not properly raise an argument in bankruptcy court that her

---

[3] McGann raises additional arguments in her reply brief, but "we generally do not consider arguments made for the first time on appeal in an appellant's reply brief and deem those arguments waived." *United States v. Leffler*, 942 F.3d 1192, 1197 (10th Cir. 2019).

7

PTSD or other mental health issues interfered with her ability to comply with the Turnover Order, she cannot show the bankruptcy court abused its discretion in not considering those issues. *Cf. Robinson v. Tenantry* (*In re Robinson*), 987 F.2d 665, 669 (10th Cir. 1993) (holding bankruptcy court's failure to consider an argument not properly raised before it did not constitute clear error).

McGann did argue that the Trustee had "unclean hands" in bringing the Contempt Motion. 25-1065 R. at 1103. But as the BAP explained, "[t]he unclean hands doctrine means, in general, that equity will not aid a party whose conduct has been unlawful, unconscionable, or inequitable." *Id.* at 40 (internal quotation marks omitted). And the bankruptcy court considered McGann's accusations against the Trustee presented at the hearing on the Contempt Motion and rejected those arguments when it found McGann in contempt and awarded sanctions. We agree with the BAP that McGann has not cited record evidence to show the Trustee acted with unclean hands in bringing the Contempt Motion; instead, the record supports a finding that the Trustee sought sanctions solely due to McGann's failure to comply with the Turnover Order. The bankruptcy court also warned McGann that she could be subject to contempt for failing to comply with the Turnover Order.

McGann had notice of the Turnover Order and she failed to comply with its express terms. She has therefore failed to show the bankruptcy court abused its discretion in finding her in contempt for failing to comply with the Turnover Order and in awarding attorney's fees as a sanction to compensate for the Trustee's

8

attempts to enforce the Turnover Order.  We therefore affirm the bankruptcy court's Contempt Order.

B.  *Appeal Number 25-1066*

"The court may dismiss a case under [Chapter 7] only after notice and a hearing and only for cause . . . ."  11 U.S.C. § 707(a).  "Under section 707(a), the debtor has no absolute right to dismissal of a Chapter 7 case."  *Smith v. Geltzer* (*In re Smith*), 507 F.3d 64, 72 (2d Cir. 2007) (internal quotation marks omitted).  It is the debtor's burden to prove cause exists for dismissal and "a debtor's ability to repay her debts will not, on its own, constitute cause for dismissal."  *Sicherman v. Cohara* (*In re Cohara*), 324 B.R. 24, 27 (B.A.P. 6th Cir. 2005) (brackets and internal quotation marks omitted).  "[T]he decision whether to grant a motion to dismiss a petition in bankruptcy lies within the discretion of the bankruptcy judge."  *Peterson v. Atlas Supply Corp.* (*In re Atlas Supply Corp.*), 857 F.2d 1061, 1063 (5th Cir. 1988).

The BAP summarized the bankruptcy court's decision:

> In the Order Denying Dismissal, the Bankruptcy Court determined that, under the totality of the circumstances, [McGann] did not meet her burden to establish cause for purposes of a § 707(a) dismissal.  The Bankruptcy Court rejected [McGann's]'s argument she could pay her creditors in full based on a proposed conditional commitment letter whereby [McGann] promised the proposed lender a first lien on the Property because the Property was property of the bankruptcy estate, and therefore [McGann] was not entitled to refinance the Property during the bankruptcy proceedings.  Moreover, the Bankruptcy Court noted it did not have authorization to approve such a proposed refinance of the Property.  In sum, the Bankruptcy Court determined this structural flaw mandated the Motion to Dismiss be denied.  The Bankruptcy Court also held, in the

alternative, that a debtor's ability to repay creditors was not sufficient "cause" for dismissal under § 707(a).

Finally, the Bankruptcy Court reviewed the totality of the circumstances factors courts considered in determining whether a dismissal is warranted under § 707(a). The Bankruptcy Court found [McGann]'s proposal would prejudice creditors and holders of priority administrative expense claims. The Bankruptcy Court reasoned, among the obvious prejudice inherent to [McGann]'s deemed illegitimate creditors, the general unsecured creditors would have no ability to recover anything from [McGann] because her discharge had not been revoked and a dismissal would not nullify the effect of the discharge. The Bankruptcy Court also found prejudice to creditors because [McGann] filed the Motion to Dismiss more than three years following her bankruptcy petition during which time creditors were forestalled from collecting the amounts owed. The Bankruptcy Court determined dismissal would also prejudice creditors because it would remove the Property from the bankruptcy estate. Finally, the Bankruptcy Court reviewed the other factors weighing against dismissal noting (i) the Trustee had objected, (ii) dismissal would likely delay payments to creditors, and (iii) [McGann] proposed to reorder distribution priorities.

25-1066 R. at 23-25.

McGann contends (1) the bankruptcy court erred in denying her motion to dismiss under § 707(a) by "relitigating matters previously resolved and failing to consider the Trustee's misconduct," 25-1066 Aplt. Opening Br. at 11 (boldface omitted); (2) ignored and incorrectly decided the facts; and (3) "violat[ed] due process by failing to enforce the May 3, 2022 transcript rulings, allowing continued harm to [her] through refusal to release claims, forced turnover, homelessness, mental anguish, and loss of her business," *id.* at 12-13 (boldface omitted).

As for the first issue, it is not clear from McGann's brief what matters were previously resolved and then relitigated that relate specifically to the bankruptcy court's reasoning in its Order Denying Motion to Dismiss. In this section of her

10

brief, she includes bullet points without a fully developed argument. She states that she is relying on Judge Brown's findings "that the Trustee failed to collect estate property and continues to improperly withhold valid claims." *Id.* at 11. But she does not explain how this shows the bankruptcy court abused its discretion in denying her Motion to Dismiss for failing to show cause under § 707(a). Our review, like the BAP's, "is limited to whether the Bankruptcy Court abused its discretion in entering the Order Denying Dismissal," and we are not "review[ing] the Trustee's alleged misconduct through this appeal process as an independent issue." 25-1066 R. at 26.

As to the second issue, McGann's arguments that the bankruptcy court ignored facts appear to be based on facts outside the scope of this appeal. She contends the bankruptcy court ignored (1) "[t]he $145,000 Swany Judgment" and "its offset rights to Claim No. 11," Aplt. Opening Br. at 11; (2) "the Trustee's failure to collect over $1.3 million in sales proceeds due to the estate," *id.* at 12; and (3) "the terms of the settlement agreement," *id*. But McGann does not explain how these facts relate to the bankruptcy court's reasoning in denying the Motion to Dismiss and how they show an abuse of discretion in denying her motion. We note that McGann also references statements the bankruptcy court made at a hearing on April 3, 2025, but that hearing occurred over a year after the bankruptcy court entered its Order Denying Motion to Dismiss, and is not within the scope of this appeal.

As for the third issue, McGann references a hearing on May 3, 2022, but she does not explain what rulings that occurred during that hearing are relevant here or cite to where in her Motion to Dismiss she raised any arguments to the bankruptcy

11

court about that hearing to support her request for a voluntary dismissal. McGann repeats allegations about the Trustee withholding claims and failing to collect critical estate assets, but she does not adequately explain how those allegations or the May 2022 hearing relate to the Motion to Dismiss she filed in October 2023, or how it shows the bankruptcy court abused its discretion in denying the motion.

Much of McGann's brief appears to be complaints or arguments related to other aspects of her bankruptcy proceeding, and/or allegations against the Trustee or the bankruptcy court. But the scope of this appeal is limited to the bankruptcy court's Order Denying Motion to Dismiss.[4] Regarding that decision, McGann argues that her Motion to Dismiss under § 707(a) "should have been granted, as the case was no longer necessary, had become abusive, and was built on a foundation of misrepresentation and fraud and [she] had the ability and offered in good faith to pay all creditors immediately." 25-1066 Aplt. Opening Br. at 14. But this conclusory assertion is insufficient to show that the district court abused its discretion in denying her Motion to Dismiss.

We agree with the Trustee that the bankruptcy court gave several reasons why the Motion to Dismiss should be denied, and "none of [them] have been addressed or rebutted by McGann." 25-1066 Aplee. Resp. Br. at 11. As a result, we also agree

---

[4] In her reply brief, McGann seeks to raise arguments related to a ruling from a Hawaii state court on May 23, 2025, and its impact on one of the claims in her bankruptcy proceeding. As noted earlier, we do not consider new arguments in a reply brief. But more importantly, any arguments about a ruling that occurred in May 2025 are outside the scope of the appeal from the bankruptcy court's denial of the Motion to Dismiss in January 2024.

with the Trustee that McGann has not met her burden of showing the bankruptcy court abused its discretion and committed reversible error in denying her Motion to Dismiss. Accordingly, for substantially the same reasons stated by the bankruptcy court in its Order Denying Motion to Dismiss entered January 31, 2024, we affirm.

## III. Conclusion

We affirm the bankruptcy court's Contempt Order in appeal number 25-1065, and we affirm the bankruptcy court's Order Denying Motion to Dismiss in appeal number 25-1066.

We deny McGann's "Motion to Renew Request for Appointment of Counsel under 10th Cir. R. 46.3(C)." We also deny her "Notice of Supplemental Development, Preservation of Claims, and Request to Incorporate Records Demonstrating Ongoing Damages," which we construe as a motion to supplement the record. We grant in part and deny in part McGann's "Renewed Motion to Supplement the Record on Appeal." We deny the request to supplement the record with the hearing transcript from May 13, 2024, because that hearing occurred after the orders were entered in these appeals. We grant the request to supplement the record with the hearing transcript from May 3, 2022, and we direct the Clerk to supplement the record with a copy of that transcript, which was filed on March 13, 2025, at docket entry 661 in bankruptcy court case number 20-18118-TBM.

Finally, we deny McGann's motion to proceed without prepayment of costs or fees (IFP) because she has not shown a financial inability to pay the appellate filing fee. But we also deny the Trustee's objection to the sealing of McGann's IFP

motion, and it will remain under seal.  It is the policy of this court to file all IFP motions under seal for privacy reasons because they contain personal financial information.

Entered for the Court


Carolyn B. McHugh
Circuit Judge